THE PEOPLE *ex rel.* Assyrian Asphalt Company

*v.*

WILLIAM D. KENT, Commissioner of Public Works.

*Filed at Ottawa March 28, 1896.*

1. DEFINITION—*of word "responsible," in the phrase "responsible bidder."* The word "responsible," applied to an undertaking to pay money only, means financial ability; but in the statute for letting contracts for public improvements, which requires a "responsible bidder," it has the wider meaning of ability to respond to the requirements of the contract, having full regard to the subject matter thereof.

2. PUBLIC IMPROVEMENTS—*who is a "responsible bidder" upon a public improvement.* The requirement of a statute that contracts for a public improvement shall be let to the lowest *responsible* bidder, does not require the letting of a contract to the lowest bidder upon the ascertainment of his *financial* responsibility only, but the term "responsible" includes the ability to respond by the discharge of the contractor's obligations in accordance with what may be expected or demanded under the terms of the contract.

3. COURTS—*limits of power to interfere with discretion of public officer.* The courts cannot interfere, in the absence of fraud, with the exercise of the official discretion of a public officer entrusted with the duty of awarding a contract, in determining whether a certain person was the lowest responsible bidder, after investigation of such person's record in doing similar business before.*

Original petition for *mandamus.*

MANN, HAYES & MILLER, and N. M. JONES, for relator:

"Responsible" is defined by Bouvier, "able to pay the sum which may be required; able to discharge an obligation." Webster defines "responsibility," "ability to answer in payment; means of paying contracts;" and defines "responsible," "liable to respond; likely to be called upon to answer; able to respond or to answer in accordance with what is expected or demanded." See *Faley* v. *Day,* 26 N. H. 527; *Dement* v. *Rokker,* 126 Ill. 174.

---

*The rights of the lowest bidder on a public contract are discussed in an extensive note to *Anderson* v. *St. Louis Public Schools,* (Mo.) 26 L. R. A. 707.

When a judicial body has found all the facts necessary to a judgment, so that the judgment is nothing but a conclusion of law upon these facts, the entering up of the judgment is, in its nature, ministerial, and *mandamus* will enforce the duty. *Dental Examiners* v. *People ex rel.* 20 Ill. App. 457; *Carpenter* v. *Commissioners*, 21 Pick. 259; *People* v. *Supervisors*, 35 Barb. 408; *People* v. *Contracting Board*, 46 id. 254.

The rule laid down was held applicable to cases where powers are granted to let contracts, and a discretion given as to the sufficiency of the bond and receiving the bids for doing the work. *Dement* v. *Rokker*, 126 Ill. 174; *People* v. *Contracting Board*, 46 Barb. 254; *Zanone* v. *Mound City*, 103 Ill. 552; *Boren* v. *Commissioners*, 21 Ohio St. 311.

It is for the abuse—not the control—of a discretionary power that relator here seeks relief against and of which the courts will take cognizance. *Brokaw* v. *Commissioners*, 130 Ill. 482; *Dental Examiners* v. *People ex rel.* 123 id. 227; *Glencoe* v. *People,* 78 id. 382; *Hotz* v. *Hoyt*, 135 id. 388.

WILLIAM G. BEALE, and GEORGE A. DUPUY, for appellee:

*Mandamus* will never be awarded except in a case where the right of the relator or petitioner thereto is clear and undeniable. *People* v. *Village of Crotty*, 93 Ill. 186.

The action will not lie where the right is doubtful. *People ex rel.* v. *Trustees of Schools*, 86 Ill. 613; *County of St. Clair* v. *People ex rel.* 85 id. 396; *People ex rel.* v. *Lieb*, id. 484; *People ex rel.* v. *Commissioners*, 88 id. 142.

The relator must show, not only that it was "the lowest reliable and responsible bidder," but that respondent was satisfied that it was the lowest reliable and responsible bidder. *People ex rel.* v. *Dental Examiners*, 110 Ill. 185.

*Mandamus* will never interfere with or control the exercise of a discretion which the law vests in a municipal officer. High on Ex. Legal Rem. (2d ed.) 30; *People ex rel.* v. *Dental Examiners*, 110 Ill. 180; *Kelly* v. *Chicago*, 62

id. 279; *People* v. *Brennan,* 39 Barb. 653; *People* v. *City of Troy,* 16 N. Y. App. 42.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Assyrian Asphalt Company, as relator, filed its petition in this court, in pursuance of leave granted for that purpose, asking for a writ of *mandamus,* directed to the defendant, William D. Kent, as commissioner of public works of the city of Chicago, commanding him to award to the relator a contract for the construction of an asphalt pavement on West Madison street, from the west line of Jefferson street to the west line of Center avenue, in said city. The defendant appeared and filed his answer to the petition. There was no further pleading, so that no issue was made in the case, but a stipulation has been filed providing that the cause shall be heard by the court and final judgment shall be rendered upon the petition, answer and stipulation, without any evidence being taken; that the facts set out in the petition shall be taken as true, except as to the matters denied in the answer; that the other facts appearing in the petition and answer shall be regarded and considered as sworn to, respectively, the same as if the parties thereto had so testified on oral examination, in open court, under oath; that the relator does not charge defendant with fraud, other than such, if any, as appears or may be inferred from his own statements and from facts admitted in his answer, and that the contract in question was let by defendant to the Barber Asphalt Company, October 7, 1895, on its bid mentioned in the petition, for $3536 in excess of the bid of relator.

The facts set up in the petition and admitted by the answer and stipulation were substantially as follows: On July 18, 1895, the city council of the city of Chicago passed an ordinance providing for the pavement in question, to be paid for by special assessment, and proceed-

ings for such assessment were instituted and carried forward to a judgment of confirmation. The estimated cost and assessment were $41,783.74. September 13, 1895, the defendant, as commissioner of public works, advertised for bids for making said improvement. The relator submitted a bid in conformity with the specified conditions, which was $3536 less than that of any other bidder. Defendant was the proper officer to determine who was the lowest responsible bidder and award the contract. The revised ordinances of the city provide, in one section, that all contracts of this character, where the expense exceeds the sum of $500, shall be let to the lowest responsible bidder, after advertising the same, except where there is a vote of two-thirds of all the aldermen elected authorizing such contract. In another section it is provided that such contracts shall be let by the commissioner of public works to the lowest reliable and responsible bidder or bidders, and that bonds, approved by the commissioner, shall be taken for the faithful performance thereof. Subsequently to the opening of the bids relator demanded of the commissioner that the contract should be awarded to it, and offered to enter into such contract and furnish proper bond for the faithful performance of the work. The defendant rejected the offer and refused to comply with the demand. The relator is a corporation engaged in the paving business, and has a plant located and in operation in the city of Chicago valued at more than $100,000, which has been in operation for some time past. There are other averments of the petition which are denied by the answer, and as to them it is provided in the stipulation that they shall be regarded and considered as sworn to by the respective parties.

That the relator must prove the conditions which make it the duty of defendant to award the contract to it is unquestioned, and under this stipulation, where there is no opportunity to judge of the credibility of witnesses or to conclude that a sworn statement of the relator out-

weighs in any particular the sworn denial of the defendant, the facts so alleged and denied must be regarded as not proved. Among the averments so denied are the following: That the relator had the ability and facilities to take and carry out the contract and do the work in accordance with the usual contract and specifications appertaining to asphaltum street pavements; that defendant did not object to the ability or facilities of the relator to carry out and perform the work; that the relator was the lowest responsible bidder or the lowest reliable and responsible bidder; that the relator was ready and able to carry on and do the work and finish the same, and to furnish materials therefor as required, and that the asphaltum proposed to be used by the relator was equal in value for paving purposes to that found in Pitch Lake, in the island of Trinidad, to which the ordinance required it to be equal. These alleged facts are therefore to be regarded as not established.

The defendant, in his answer, states the following facts, which will be regarded, under the stipulation, the same as if he had testified to the same under oath: That his sole and only reasons for refusing to award said contract to said relator were and are, that he was not satisfied that said relator was the lowest reliable and responsible bidder; that said relator had never made asphaltum pavements in the city of Chicago; that the material of which said relator proposed to make said improvement is what is known as Utah asphaltum, and said asphaltum is, in his opinion, very greatly inferior to the Pitch Lake asphaltum; that the asphaltum used by the relator has not had a test of more than about five years, and in his opinion such time is wholly inadequate to determine the quality, durability and general fitness of such material for paving purposes, and that he caused inquiry to be made in various cities where the relator claimed to have done work, and that the information which he obtained as to the quality of the workmanship

and materials used was that the same were both poor and unsatisfactory.

It thus appears that the refusal of the defendant to award the contract was because, in the exercise of the judgment and discretion reposed in him by the statute and the ordinance, he concluded, from information and inquiry, that the materials customarily used and the workmanship exhibited by the relator in the performance of the kind of work required were poor and unsatisfactory, and that it could not be expected that the relator in this instance would be able to meet and discharge the conditions and obligations of the contract in a satisfactory manner, and his conclusion was reached and the bid of the relator rejected in good faith and without any improper motive or fraud, under the terms of the stipulation, unless the rejection of the bid for such a reason could be deemed a fraud in law.

Section 50 of article 9 of the act for the incorporation of cities and villages, under which the city of Chicago is organized, provides that contracts of the nature of this one shall be let to the lowest responsible bidder, in the manner to be prescribed by ordinance. One section of the ordinance has the same provision, while another section requires the contract to be let to the lowest reliable and responsible bidder. The relator contends that it was not within the power of the city to enlarge the conditions of the statute or to impose additional terms and qualifications, and that the term "reliable" is to be taken as synonymous with "responsible," and not as enlarging the terms of the statute. It may be conceded that this is true, and that if the relator was such a bidder as the statute required the contract to be awarded to, the city could not add another qualification and require the contract to be let to one of a different class of persons. It is insisted that the relator was the lowest, responsible bidder; that the word "responsible" refers only to the pecuniary ability of the bidder to do the work; that what is meant is finan-

cial responsibility, only; that when such financial respon-
sibility of a bidder is ascertained or conceded, then the
statute is mandatory, and the duty of the commissioner
becomes imperative to award the contract to such a bid-
der, and that such duty is ministerial.    In our judgment,
however, the term "responsible" should not receive a con-
struction so narrow and limited.  In one sense the term is
synonymous with "accountable," and means answerable,
legally or morally, for the discharge of a duty, trust, debt,
service or other obligation.  In that sense a bidder enter-
ing into a contract becomes responsible for its fulfillment.
But this was not the sense in which the term is em-
ployed.    In the statute it was evidently used in its other
sense—of ability to respond.  In that sense "responsible"
means to be able to answer or respond in accordance with
what is expected or demanded, and to discharge a claim
or duty.  The scope of the term depends upon the subject
matter to which it is applied.  If it is applied to a surety,
or to the maker of a bond, note or other instrument to be
satisfied or discharged by the payment of money, it means
ability to discharge the obligation under which the party
is thereby placed, by the payment of the sum of money.
So far as such an obligation is concerned, financial ability
makes a party responsible, and, perhaps on account of
the frequency of such obligations, this is the sense in
which it is most often used.    But a party may be bound
or obliged, by duty or contract, to meet and discharge
claims and obligations other and different from the pay-
ment of money, such as a trust or the keeping of stipu-
lations or conditions, and in such cases "responsibility"
means ability to perform or discharge what may be ex-
pected or demanded under the duty or contract.    As
applied to a bidder who proposes to undertake the per-
formance of the stipulations and conditions of such a
contract as this, we regard the term as including the
ability to respond by the discharge of his obligations
in accordance with what may be expected or demanded

under the terms of the contract. It is not unreasonable to suppose that the intent of the statute was to limit competition to parties able to perform the conditions of the contract. Such ability is of great importance to the city and the parties assessed to pay for the improvement. It is only by letting the contract to a bidder capable of performing it, that the full benefit and advantage sought to be derived from the improvement can be realized.

There was provision made for a bond, with sureties financially able and bound to respond in damages for a failure on the part of a bidder to perform his contract. But a recovery of damages, aside from the delay and expense incident to the suit, is never full compensation for the incidental damages, the injuries and annoyance resulting from incompetency and inefficiency. If all that was meant was financial responsibility, the bond would secure all the desired benefit; and we think that the added requirement, that the bidder shall be responsible, has a broader meaning than the mere financial ability to respond in damages which is provided for by the bond.

It appears that the defendant, after investigating the records made by the relator in doing similar work before, and the other matters referred to in his answer, determined that the relator was not the lowest responsible bidder. He was vested with the exercise of official judgment and discretion, with which, in the absence of fraud, courts have no right to interfere. (*Kelly* v. *City of Chicago*, 62 Ill. 279; *People ex rel.* v. *Dental Examiners*, 110 id. 180; *People ex rel.* v. *Mayor*, 25 Wend. 680; *People ex rel.* v. *Council of Troy*, 78 N.Y. 33.) In this case there was neither favoritism nor fraud as a matter of fact, and none is to be inferred as a matter of law.

The writ will be denied.          *Writ denied.*