(December 28, 1900.)

## ANDREWS v. BOARD OF COMMISSIONERS OF ADA COUNTY.

[63 Pac. 592.]

STATUTE—TITLE OF ACT.—The title to an act approved March 14, 1899 (Sess. Laws 1899, p. 443), *held*, a sufficient compliance with the provisions of article 16, section 3 of the Constitution of Idaho, in that it states the subject of said act.

ERECTION OF BRIDGE—PLANS AND SPECIFICATIONS—NOTICE.—Under the provisions of section 1762 of the Revised Statutes before the board of commissioners can legally advertise for competitive bids for the erection of a bridge, they must adopt plans and specifications of such bridge, and said notice must contain explicit specifications of the proposed bridge.

SAME—LOWEST BID.—If no plans and specifications are adopted, the board has no standard by which the lowest bid can be determined.

ADVERTISING FOR BIDS—LETTING CONTRACTS.—In the matter of advertising for bids and letting contracts for public buildings or improvements, the provisions of section 1762 applicable thereto must be substantially followed.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

S. H. Hays, Attorney General, and E. J. Frawley, for Appellant.

The contention that the title of the funding act of February 7, 1899, is insufficient to support the provisions of section 3604 of the Revised Statutes of Idaho, authorizing the construction of bridges and other public improvements, and providing for the original issue of bonds in payment therefor, upon the theory that the issue of such bonds for the construction or repair of roads or bridges, or for any original purpose provided for in said section, is not embraced within the scope of the act in question, is not well founded. (*Sabin v. Curtis*, 3 Idaho, 662, 32 Pac. 1130; *Wright v. Kelly*, 4 Idaho, 624, 43 Pac. 565; *State v. Doherty*, 3 Idaho, 384, 29 Pac. 855; 23 Am. & Eng. Ency. of Law, 234, 238; *Johnson v. Harrison*, 47 Minn. 578, 28 Am. St. Rep. 382, 50 N. W. 923; *People v. Wands*, 23 Mich. 384; *Weyand v. Stover*, 35 Kan. 545, 11 Pac. 355; *Parkinson v. State*, 14 Md. 184, 74 Am. Dec. 522; *People v. Lawrence*, 36 Barb. 177; *Ewing v. Bernette*, 11 Pet. 499; *United States v. Lacher*, 134 U. S. 624, 10 Sup. Ct. Rep. 625; *State v. Payne*, 22 Or. 335, 29 Pac. 789; *Randolph v. Payne*, 44 Cal. 366.)

Fremont Wood and Milton G. Cage, for Respondents.

We insist that the title of the re-enacted statute is not sufficiently broad to support the provisions of section 3604, which in no way relate either to the funding or refunding of county indebtedness. While the language of the title of the amendatory act is plain, and not susceptible of misconstruction when considered in connection with the constitutional requirement, we are not wanting in authority directly bearing upon the subject. (*Palmer v. Zumbrota Bank* 72 Minn. 266, 75 N. W. 381; *Crowther v. Insurance Co.*, 85 Fed. 41; *Fidelity etc. Co. v. Shenandoah Valley R. R. Co.*, 86 Va. 1, 19 Am. St. Rep. 858, 9 S. E. 759; *Cannon v. Mathes*, 8 Heisk. 521; *Ryan v. Louisville etc. Terminal Co.*, 102 Tenn. 111, 50 S. W. 744, 45 L. R. A. 309; *McEldowney v. Wyatt*, 44 W. Va. 711, 30 S. E. 239, 45 L. R. A. 615; *Dolese v. Pierce*, 16 N. E. 218; *Lockport v. Gaylord*,

61 Ill. 279; *People v. Institution,* 71 Ill. 229; *People v. Mellen,* 32 Ill. 181; *Welch v. Post.* 99 Ill. 471; *Raïlway Co. v. Lake View,* 105 Ill. 183.) The trial court was clearly correct in its conclusion that there were no competitive bids under the authority of *Ertle v. Leary,* 114 Cal. 238, 46 Pac. 1; *Worthington v. City of Boston,* 41 Fed. 23; *Brady v. Mayor of N. Y.,* 20 N. Y. 512; *Kneeland v. Furlong,* 20 Wis. 438; *Fones Bros. v. Erb,* 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 355.

SULLIVAN, J.—This is an appeal from a judgment of the district court that reversed and annulled an order of the board of county commissioners of Ada county authorizing a contract with the Gillette-Herzog Manufacturing Company for the construction of a wagon bridge across Boise river, near Boise City, at the agreed price of $15,335. It is stipulated that it was the purpose of the board of commissioners to construct said bridge under the authority of the provisions of an acts approved February 7, 1899, entitled "An act providing for the issuance of negotiable coupon bonds for the funding and refunding of county indebtedness, amending chapter 6, title 13, Revised Statutes of Idaho, and the subsequent amendment thereto approved March 14, 1899."

1. It is contended that the title of said act of February 7, 1899, is not sufficient to support the provisions of section 3604 thereof, which authorizes the construction of bridges and other public improvements, and the issue of bonds in payment therefor, as that subject or purpose is not expressed in the title; that the title of said act recites that the purpose of the act is "for the issuance of negotiable coupon bonds for the funding and refunding of county indebtedness"; and that the issuance of bonds for the purpose of building bridges and the construction of such other public improvements as are named in said section is not included in said title, and for that reason said provisions are void, under the provisions of section 16 article 3, of the constitution of Idaho, which provides that every act shall embrace but one subject and matters properly connected therewith, which subject must be expressed in the title. Conceding, for the purposes of this case, that said title refers only to the issuance of

coupon bond for funding and refunding county indebtedness, and does not include the issue of bonds for the purpose of constructing such public improvements as are mentioned in said section 3604 when such proposed indebtedness exceeds the income or revenue of the county for that year, we find that said act of February 7th was amended by an act approved March 14, 1899, the title to which act is as follows: "To amend section 3604 (concerning issue of bonds by counties for certain purposes in excess of the income or revenue of the county for the year) in section 1 of an act of the legislature of the state of Idaho, entitled 'An act providing for the issuance of negotiable coupon bonds for the funding and refunding of county indebtedness, amending chapter 6, title 13 Revised Statutes of Idaho,' approved February 7, 1899, by adding thereto authority to issue bonds to assist any city or village in constructing a free bridge over any navigable stream, within, or partly within or adjoining the limits of any such city or village." It will be observed that it is stated in the title of the last-mentioned act that it is an act to amend section 3604, and also recites that the subject of said section is concerning the issue of bonds by counties for certain purposes in excess of the income or revenue of the county for the year. The subject, object, or purpose of said section is sufficiently set forth in said title, and comes within the requirements of said section 16, article 3, of our constitution. "We therefore hold that said title is sufficient. (*State v. Doherty,* 3 Idaho, 384, 29 Pac. 855. See, also, 23 Am. & Eng. Ency. of Law, 234 et seq.)

The second point raised involves the authority of the board to provide for an issue of bonds for the construction of the bridge in question until such time as the contract price for the bridge has been first legally determined by the board. It is contended that it was the duty of the board first to determine the necessity for the construction of said bridge; then to adopt plans and specifications, advertise for proposals for construction thereof in accordance with such plans and specifications, and thereafter enter into a conditional contract for the construction of such bridge subject to the ratification by the electors of the county, and then submit the question of the issuance of a suffic-

ient amount of bonds to pay such contemplated liability, after deducting all funds in the county treasury available for that purpose. It is evident that the amount necessary to construct the contemplated improvement must be ascertained in some manner before the amount of bonds to be issued can be determined; and, before persons desiring to bid for such contracts can make competitive bids, they must have plans and specifications of the contemplated public improvement before they can make an intelligent bid. It therefore follows that the board must adopt plans and specifications sufficient to enable a contractor to make an intelligible estimate of the cost of such public improvement. If each several bidder bids on separate plans and specifications, it will not be contended that such bids are competitive; and where, as in the case at bar, bids for the construction of a two-span five hundred foot bridge were called for, and a three-span bridge less than five hundred feet long was let under said call, no competitive bidding was allowed or had. It is evident that said contract was not let to the lowest responsible bidder for the reason that no proposals were invited for the construction of a three-span bridge less than five hundred feet in length. In discussing the question of competitive bidding for the construction of a public building, the supreme court of California has very pertinently stated in *Ertle v. Leary,* 114 Cal. 238, 46 Pac. 1, as follows: "To permit each bidder to propose the plans and specifications according to which he will construct the building not only prevents competition in bidding for the work, but gives to the board an opportunity for the exercise of favoritism in awarding the contract, instead of being required to let it to the lowest responsible bidder, for, since neither of the bidders can know the plans and specifications under which the others are making their bids, there is no standard by which the board can determine which is the lowest bid." (See, also, *Hardware Co. v. Erb,* 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353.)

The third point raised involves the question of procedure in submitting to the electors the question of issuing bonds. It is shown by the record that the order for the election, and also the election notices, stated that specifications for the construction of said bridge were on file in the office of the clerk of said board,

when, as a matter of fact, no plans or specifications had been adopted. The disposition of the second point raised disposes of this specification of error in favor of respondent's contention.

The fourth assignment of error is to the effect that said contract was void, for the reason that plans and specifications for said bridge were not adopted by the board prior to the notice for sealed proposals for the construction of said bridge, and for the further reason that the bridge contracted for does not comply with the plans and specifications adopted by the board. That assignment of error is well taken. The contract is void for both reasons stated in said specification. The record shows that the contract was let to the Gillette-Herzog Manufacturing Company upon plans submitted by it, and not upon the specifications stated in the notice inviting bids for the construction of said bridge. No standard having been fixed by the board by which to determine the lowest bid made, the commissioners could not determine who was the lowest bidder, and for that reason the contract was not let to the lowest responsible bidder, and is void for that reason. The trial court held that said contract was void for the reason that the board failed to follow the provisions of section 947 of the Revised Statutes, in letting the contract. Said section is as follows: "No bridge, the cost of the construction or repair of which will exceed the sum of one hundred dollars, must be constructed or repaired except on order of the board of commissioners. When ordered to be constructed or repaired, the contract therefor must be let out to the lowest bidder, after reasonable notice given by the board of commissioners, through the road overseer, by publication at least two weeks in a county newspaper; and if none, then by three posted notices, one at the court house, one at the point to be bridged, and one at some other neighboring public place; the bids to be sealed, opened, and the contract awarded at the time specified in the notice. The contract and bond to perform it must be entered into to the approval of the board of commissioners." We gather from the record that the board intended to let the contract under the provisions of section 1762 of the Revised Statutes, which section is as follows: "When a petition signed by at least one-third of the taxpayers who are qualified voters of any county is

presented to the board at any regular meeting, asking that a courthouse, jail or other public buildings or improvements be built for the use and benefit of the county the cost of which will exceed $1,000, the board must not act upon the said petition until the next regular meeting; and at least for four weeks before the next meeting the clerk of the board must give notice by publication in a newspaper or otherwise, as ordered by the board, of presentation of said petition, and the nature and cost of said buildings, or improvements contemplated, and that the petition will be acted upon by the board at their next regular meeting. If they deem the interest of the county demands it, the board must order the said improvements or buildings to be made or erected, and must thereupon advertise for sealed proposals for making said improvements or erecting said buildings. Such notice for sealed proposals must be given by the clerk in a newspaper or otherwise, as ordered by the board, for at least thirty days, and must contain explicit specifications of the improvements or buildings to be made or erected, and state the day when said proposals will be opened. Proposals may be received until the opening of the session on the day they are to be opened, and they must be opened and considered publicly, and the contract let to the lowest responsible bidder, unless they all be rejected, which the board shall have power to do if they are too high; and the board may proceed to advertise again or let the same by private contract, provided it be for a less sum than that proposed by the lowest bidder. The person or persons awarded the contract must give a good and sufficient bond to be approved by the commissioners for the completion of the contract according to the specifications. The building or improvements may be paid for by warrants upon the proper fund, or by the levying of a special tax, not exceeding fifty cents on each one hundred dollars' of assessable property, to be paid into a special fund for that purpose; against which warrants may be drawn in payment for buildings or other improvements constructed or made under the provisions of this section." Said sections must be read in the light of the provisions of section 3, article 8, of the constitution, which section is as follows: "No county, city, town, township, board of education or school district, or other

subdivision of the state, shall incur any indebtedness or liability in any manner or for any purpose exceeding in that year the income and revenue provided for it for such year without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring said indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness, as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to his provision shall be void: provided, that this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state." Upon a careful consideration of this matter we are of the opinion that, so far as the advertising for bids and letting contracts like the one under consideration are concerned, the provisions of said section 1762 must be substantially followed. (See *Dunbar v. Board,* 5 Idaho, 407, 49 Pac. 409.) The judgment of the court below is affirmed. No costs to be charged in this court to either party.

Huston, C. J., and Quarles, J., concur.