No. 5574. Decided July 5, 1905.)

J. W. A. NICHOLS, *Appellant,* v. SCHOOL DISTRICT No. 10, OF PIERCE COUNTY, *et al., Respondents.*[1]

SCHOOLS AND SCHOOL DISTRICTS—PURCHASE OF BUILDING SITES—ULTRA VIRES. Under Bal. Code, § 2367, the board of directors of school district No. 10, Pierce county, has authority to purchase a site for a high school building for the sum of $32,000, when it did not exceed the constitutional limit of indebtedness of the district.

SAME—RATIFICATION OF PURCHASE OF SITE—ELECTION AUTHORIZING ERECTION OF SCHOOL BUILDING. An illegal or invalid purchase of a high school site by a school district board is impliedly ratified by a vote of the district at a special election, authorizing the building of a high school thereon and the issuance of bonds therefor.

SAME—SPECIAL ELECTIONS FOR BONDS—CONDUCT OF—REQUISITES. Bal. Code, §§ 2398-2405, prescribing the method of conducting special school elections for the validation of illegal indebtedness, is a special act and has no reference to an election to authorize the issuance of bonds for the purpose of erecting a high school building.

SAME—CANVASS OF VOTES—EFFECT—REVIEW BY COURTS. In a proceeding for an injunction to restrain the issuance of school district warrants, authorized at a special election for the purpose of erecting a high school building, the final return of the canvassing board, declaring the result, after canvassing the votes, regularly made and not impeached for fraud, nor attacked in any proceeding to obtain a review thereof, is final and conclusive on the courts as to the number of votes cast.

[1] Reported in 81 Pac. 325.

Appeal from a judgment of the superior court for Pierce county, Rice, J., entered November 12, 1904, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action to enjoin the issuance of school district warrants. Affirmed.

*John C. Stallcup* and *H. W. Lueders,* for appellant.

*F. Campbell,* for respondents.

Crow, J.—This is an action commenced by appellant, a taxpayer, against the board of directors of school district No. 10, of Pierce county, Washington, and John B. Reed, as county treasurer, to enjoin the issuance and sale of $200,-000 of school district bonds. From a judgment of dismissal, an appeal has been taken.

The record shows that said school district has for many years owned and used for high school purposes a certain building, situated on Tacoma avenue, in the city of Tacoma, and that, on March 11, 1903, said district contracted for, and purchased, a tract of land known as the "Tourist Hotel property," agreeing to pay therefor the sum of $32,000, and immediately issued a warrant for $16,000, as part payment. Afterwards, on March 18, 1903, the board of directors duly called a special school election, for the purpose of submitting to the voters of said district a proposition to issue bonds in the sum of $200,000, $35,000 to be used for the purchase of said Tourist Hotel site, and $165,-000, for the purpose of erecting a high school building thereon. An election was held in pursuance of this call, on April 18, 1903, at which time the proposition to issue said bonds was defeated. Afterwards, on July 7, 1903, the board of directors issued a second warrant, in payment of the balance due for the purchase of said Tourist Hotel site. On March 2, 1904, by an amended resolution adopted by said board of directors, it was determined to call a special

election to be held on April 23, 1904, for the purpose of voting upon the following propositions:

(1) Shall Tacoma school district No. 10, in Pierce county, Washington, borrow money and issue and sell bonds of said school district therefor, to run for a period of twenty years, in the amount of $200,000, the proceeds of said bonds to constitute a special fund, $100,000 thereof to be used for the erection of a high school building, and $100,000 to be used for the erection and improvement of other buildings? (2) Shall said district build a high school on the site known as "the Tourist Hotel property? (3) Shall said district build a high school on the present Tacoma avenue site? (4) Shall said school district sell the present Tacoma avenue high school property? (5) Shall said school district sell the Tourist Hotel property?

Thereafter, on the 23d day of April, 1904, said election was held, and on April 26, 1904, the board of directors met with C. E. Griffin, justice of the peace, in Tacoma precinct, Tacoma, Washington, as a canvassing board, and duly canvassed the result of said election as required by law; the certificate made and filed by said canvassing board being as follows:

"We the undersigned members of the board of directors, Tacoma school district No. 10, having met to canvass the results of the special election held Saturday, April 23, 1904, for the purpose of voting on the following propositions, to wit: [here follow propositions 1, 2, 3, 4 and 5 just described] hereby certify that the whole number of ballots cast for the first proposition was 2,136; 'yes' receiving 1,349 votes; 'no' receiving 787 votes;

"That the whole number of ballots cast for the second proposition was 2,063; 'yes' receiving 1,062 votes, and 'no' receiving 1,001 votes;

"That the whole number of ballots cast for the third proposition was 1,935; 'yes' receiving 840 votes, and 'no' receiving 1,095 votes;

"That the whole number of ballots cast for the fourth

proposition was 2,038; 'yes' receiving 872 votes, and 'no' receiving 1,166 votes;

"That the whole number of ballots cast for the fifth proposition was 2,074; 'yes' receiving 957 votes, and 'no' receiving 1,117 votes.

"We hereby declare that proposition No. 1 'Bonds, yes' carried, having received the requisite three-fifths majority of all the votes cast. And proposition No. 2 having received a majority of all the votes cast, we declare carried. Propositions 3, 4 and 5, having failed to receive a majority of all the votes cast for the respective propositions, we hereby declare them lost."

Thereafter the officers provided by law proceeded to advertise for bids for said bonds in the sum of $200,000, and on June 10, 1904, the bid of Rudolph Kleybolte & Co., being the highest and best bid received, was accepted, and said board was about to issue said bonds when this injunction proceeding was commenced.

Numerous assignments of error are presented, but we think many of them without sufficient foundation to necessitate their discussion herein, and we will only discuss those of controlling importance. It is contended by appellant that the act of the school directors in purchasing said Tourist Hotel site was *ultra vires,* and also in direct contravention of the order of the voters of said school district as expressed at said first election held on the 18th day of April, 1903; also, that in making said purchase, the said district exceeded its constitutional limit of indebtedness.

We are of the opinion that the act of said board was not *ultra vires;* that full authority for said purchase is given by § 97 of the code of education, 3 Bal. Code, § 2367; and that the appellant has failed to clearly show by the evidence that, when said school district made said purchase and issued warrants therefor, it did in fact exceed its constitutional limit of indebtedness. Were we to assume, however, that said purchase was in the first instance illegal, invalid, or *ultra vires,* nevertheless, at the second election held on the

23d day of April, 1904, and which we hold to have been valid, the act of said district in making said purchase was impliedly ratified, for the reason that by the vote of said district the board was instructed to build a high school upon said site, and not to sell the same.

It was contended by appellant upon the trial, and is contended here, that sufficient and legal notice of said election of April 23, 1904, had not been given by said board of directors. We have carefully examined the complaint, and fail to find that appellant has alleged any such want of notice. But even had such defect been properly pleaded, the record shows said election to have been regularly and legally called, and the trial court found it to have been duly held, pursuant to said resolution of said board and notice thereof given as required by law.

Appellant urges many alleged irregularities in the conduct of said election, such as improper ballots, want of election booths, etc., apparently contending that this election should have been called and held under Bal. Code, §§ 2398-2405. An examination of these sections, however, will show that they constitute a special act originally passed in 1895, Laws 1895, p. 26, relating only to the validating and ratifying of illegal indebtedness, afterwards incorporated into the code of education; whereas, this election was called, not to validate or ratify an illegal indebtedness, but to confer upon the board authority to issue bonds to raise funds with which to erect school buildings, including a high school.

Appellant also contends that the trial court erred in not ordering a production of the ballots cast, and the poll books kept at said election, so that the court might ascertain whether the certificate made by the canvassing board was correct, and whether said board was justified in finding that the bonds had been actually authorized by a three-fifths vote. It is conceded by appellant that no statutory provision has been made for any contest of an election of this character, after canvass by the board of directors. Re-

spondents contend that the action of such board is final, relying upon the authority of *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757, and *Heffner v. County Com'rs,* 16 Wash. 273, 47 Pac. 430.

In *Parmeter v. Bourne, supra,* it appears that, at the general election held in November, 1892, there had been submitted to the electors of Pacific county a proposition to remove the county seat from Oysterville to South Bend; that afterwards the votes had been canvassed by the board of county commissioners, and that said board had declared said county seat to have been removed from Oysterville to South Bend. The appellant, a citizen and taxpayer of Oysterville, brought action to vacate the order of the county commissioners, and to obtain an injunction restraining the defendants from removing the public records. This court held, in substance, that the superior court had no jurisdiction of the subject-matter of the action which sought to enjoin such removal, for the reason that the action of the board of canvassers in declaring the result of said election was final, no contest being provided for by statute.

In *Krieschel v. County Com'rs,* 12 Wash. 428, 41 Pac. 186, the facts show that, at the general election held in November, 1894, a proposition was submitted to the voters of Snohomish county to remove the county seat from Snohomish to Everett; that, after the election was held, the board of county commissioners, without having actually canvassed the vote, declared the city of Everett to be the county seat from and after January 1, 1895. Krieschel, a taxpayer, commenced the action to enjoin the removal of said county seat, and Anders, J., in writing the opinion, distinguished the case of *Parmeter v. Bourne,* for the reason that in the *Snohomish* case it appeared that the board, as a matter of fact, had not met as a board of canvassers and discharged its duties as required by law, and that for said reason a court of equity could interfere and enjoin such removal. Afterwards, however, the board of county com-

missioners did meet as a canvassing board, and did canvass said returns, and in so doing refused to count certain votes cast in Port Gardner in favor of removal, and also refused to count two hundred votes returned from South Snohomish against removal. After canvassing the returns, the board declared Everett to have been chosen as county seat, and again adopted a resolution providing for such removal. To prevent this removal, the action reported in *Heffner v. County Com'rs, supra,* was instituted, and in that case this court, following *Parmeter v. Bourne,* again held that, as the board had met and canvassed the vote and had discharged its duties, its action was final, and a court of equity could not interfere by injunction.

As above stated, respondents herein rely upon these authorities in support of their proposition that the action of the canvassing board was final. Appellant, however, contends that a distinction exists between this case and said cases from Pacific and Snohomish counties, for the reason that the questions there submitted at said election were political in their character whereas the questions here submitted were not political, but called for the incurring of indebtedness and imposing additional taxation. We do not pass upon the question as to whether there is any merit in this suggestion, but are of the opinion that, under the peculiar facts of this case, the principles laid down in the cases above cited should apply, and that the action of the canvassing board herein is final. We do not undertake to say that in no instance could inquiry be made into the final action of a board of canvassers, upon an election of this character. It might be that, in cases of fraud, of utter failure to discharge duty, or of malfeasance, such inquiry might be made by a court of equity, or by some proper proceeding instituted for the purpose of obtaining a review of the action of such board. An examination of the complaint shows that the appellant has utterly failed to allege facts sufficient to constitute fraud, failure to dis-

charge duty, or malfeasance in office, upon the part of the board of directors herein when sitting as a canvassing board, and for this reason we think the action of the trial court in refusing to go behind their certificate was proper.

Some question has been raised by the appellant herein as to whether the bonds actually carried by a three-fifths vote. Upon an examination of the record, we think it sufficiently appears that the necessary vote was obtained upon all propositions declared to have been carried.

We find no error in the record, and the judgment is affirmed.

MOUNT, C. J., ROOT, HADLEY, FULLERTON, and DUNBAR, JJ., concur.