[No. 8559. Department One. March 24, 1910.]

C. S. Goshert *et al.*, *Appellants*, v. The City of Seattle *et al.*, *Respondents.*[1]

Municipal Corporations — Improvements — Contract—Call for Bids—Filing and Changing Specifications. Under a city charter requiring contracts to be let to the lowest bidder upon notice, at the time of publication of which notice plans and specifications must be filed and open to public inspection, the city makes such a material modification of the specifications filed as to invalidate subsequent proceedings, when, after filing the same and publishing notice, it sends out a circular letter to bidders to the effect that the specifications filed, particularly describing the materials and details of the construction of an electrical fire alarm apparatus, were intended only to define a standard of functions to be performed by the apparatus and equipment, and not to define or limit its type, design or construction, and that apparatus of any type, design or construction that would properly perform the functions indicated by the specifications, if satisfactory to the board and city electrician, will be acceptable to the city.

Same—Enjoining Municipal Contract—Parties Plaintiff—Taxpayers. Residents and taxpayers in a city may maintain an action to enjoin the letting of a contract required to be let to the lowest bidder, in violation of a charter provision requiring plans and specifications to be filed, and it is immaterial that the suit was commenced at the instance and cost of an unsuccessful bidder.

Appeal from a judgment of the superior court for King county, Main, J., entered October 1, 1909, upon findings in favor of the defendants, dismissing an action for an injunction, after a trial on the merits. Reversed.

*Todd, Wilson & Thorgrimson,* for appellants.

*Scott Calhoun, Bruce C. Shorts,* and *Harold Preston,* for respondents.

Gose, J.—The plaintiffs, taxpayers and residents of the city of Seattle, commenced this action for the purpose of enjoining the city and its board of public works from entering into a contract with the Star Electric Company for fur-

[1]Reported in 107 Pac. 860.

nishing the city with equipment for a fire alarm central office. Prior to the trial of the case, certain other taxpayers were permitted to intervene as plaintiffs. After a hearing on the merits, judgment was entered dismissing the case and taxing the costs to the plaintiffs and the interveners. The correctness of the judgment is challenged by this appeal.

In January, 1908, the city of Seattle passed an ordinance, section 1 of which provides:

"That the board of public works be and it is hereby authorized and directed to award a contract for the equipment of a manual and automatic fire alarm central office for the city of Seattle; said central office equipment to have a capacity of not less than forty (40) box circuit, ten (10) joker and ten (10) gong circuits, all as designed and specified by the city electrician." Ordinance, Seattle, No. 17,760.

Thereafter the city electrician prepared the specifications and filed them with the secretary of the board of public works. Thereafter, and on May 7, 1908, the board published a call for bids, to be received up to May 26, 1908. On May 19, a representative of the Star Electric Company called upon the chairman of the board and represented that his company could not bid upon the specifications as prepared and filed. Thereupon the board issued and mailed to all the parties who later submitted bids the following notice, omitting signature:

"May 20th, 1908.

"Office of the Board of Public Works.

"Notice to Contractors and Dealers in Fire Alarm Apparatus.

"Referring to the notice to contractors and dealers in fire alarm apparatus first published by order of the Board of Public Works under date of May 7th, 1908, advertising that sealed proposals will be received by the secretary of said board up to 11 o'clock A. M., Tuesday, May 26th, 1908, for furnishing for use of the fire department of the City of Seattle certain apparatus therein described. Referring also to the specifications issued by the city electrician under date of May 5th, 1908, under title, 'Specifications for Fire Alarm Office Equipment for the City of Seattle.'

"It appearing now from the inquiries made to this board

that there may be misunderstanding on the part of bidders as to the intent of the specifications referred to, you are hereby notified that such specifications were intended and are hereby construed to define a standard of functions to be performed by the apparatus and equipment to be purchased thereunder and to suggest appliances known to perform such functions, and not to define nor to limit the said apparatus and equipment as to type, design, constructions, make, patents or method of operation to those described in the said specifications, and that the instructions of this board in pursuance of which the said specifications and notice to contractors were issued, were to the effect that apparatus and equipment of any type, design, construction, make, patents or methods of operation which can be shown to properly perform the functions indicated by the said specifications to the satisfaction of the Board of Public Works and the city electrician, will be acceptable to this board and proposals covering same will be received and considered, but any contract awarded to cover any or all of said apparatus and equipment shall be subject to the terms and conditions in said specifications intended to govern the business features of the transaction.

"You are hereby notified further that in view of the possibility of misunderstanding on the part of bidders on the above points or if any impression which they might have formed from the wording of the said specifications to the effect that only such apparatus and equipment as would conform exactly to the appliances mentioned or described in the said specifications would be considered by or acceptable to the Board of Public Works, and that in the event of any such misunderstanding or incorrect impression, the time now remaining for the submittal of proposals under the original notice might be too short in which to re-estimate costs or to correct figures already prepared, the time up to which the Board of Public Works will receive proposals on the above mentioned apparatus and equipment is hereby set forward to eleven o'clock A. M., Tuesday, June 9, 1908.

"Bidders will be required to acknowledge receipt of this notice and to accept same as binding in connection with any proposals submitted or contract awarded under the said specifications."

In a letter accompanying the notice, the board stated that

it superseded the notice previously published.  The bids were opened on June 9, and on June 13 the board accepted the bid of the Star Electric Company, and this suit was instituted and this appeal is prosecuted to enjoin the respondents from entering into a contract with it.  Section 14, of article 8, of the city charter of the city of Seattle, provides:

"All public improvements to be made by contract shall be let to the lowest bidder therefor.  Before awarding any such contract the board of public works shall cause to be published in the official newspaper of the city a notice, for at least ten days before the letting of such contract, inviting sealed proposals for such work, the plans and specifications whereof must, at the time of the publication of such notice, be on file in the office of the secretary of the board, subject to public inspection."

It is conceded that the plans and specifications were filed, and that the notice was given as directed by the charter.

The first and principal contention of the appellants is that the notice issued by the board of public works on May 20 is such a material modification of the specifications of the city electrician as to invalidate the subsequent proceedings of the board.  We think this contention must be upheld.  Not only does the ordinance provide that the contract shall be awarded for the equipment as designed by the city electrician, but, as we have seen, the charter of the city requires that the board shall, before letting the contract, cause a notice to be published inviting sealed proposals, "the plans and specifications whereof must at the time be on file in the office of the secretary of the board, subject to public inspection."

The contention of the respondents that the circular letter or notice is not a material modification of the specifications, but only an interpretation thereof, cannot be sustained.  It is urged that its intent and purpose was simply to interpret and make certain that which the specifications left doubtful.  An examination of the specifications discloses a full and detailed description of storage battery, controlling switch boards, relay switchboards, joker switchboards, gong line

switchboards, manual transmitter, registers, etc. Not only this, but they described with particularity the storage battery and switchboards, the material out of which the equipment shall be made, the finish, the details of construction and equipment and manner of operation, and numerous other details not necessary to set forth. The pith of the circular is that the specifications were intended, and are construed, to define a standard of functions to be performed and to suggest appliances known to perform such functions, and not to define or limit the apparatus and equipment as to type, design, construction, make, patents, or methods of operation; that equipment of any type, design, construction, make, patent or method of operation which performs the functions indicated by the specifications to the satisfaction of the board and city electrician will be acceptable; that bidders must accept the notice as binding upon them in any contract awarded under the specifications, but that the specifications shall govern the business features of the contract.

The language of the letter is clear and its meaning plain. Stripped of its superfluities, it means that bids shall be submitted on the basis of furnishing an efficient system to the satisfaction of the board, the specifications to control only as to the business features. It abrogates the specifications except as to their business features, and establishes in lieu thereof any equipment which the board and the city electrician may deem adequate and efficient. Obviously the letter cannot be said to be such specifications as the charter requires. The purpose of the charter provision is to prevent favoritism, extravagance, and fraud by furnishing specifications so full and complete as to afford an intelligent basis for competing bidders to act upon. Intelligent competition is the end sought. Surely it cannot be said that, where an expensive equipment of intricate mechanism is sought and no standard other than efficiency is fixed, there can be any intelligent competitive bidding. It will at once occur to the mind that there would be as many notions of efficiency as there were

bidders, and that no two bids would be made on the same basis. Moreover, there could be no standard of comparison for the board to act upon in considering the several bids and determining which was the lowest. The notice provides that it shall be made a part of the contract. The obligation of the contract would have to be measured not alone by the plans and specifications but by these and the notice. Instead, therefore, of each bidder bidding upon the same thing, the spectacle would be presented of bids being submitted upon different standards of efficiency. These suggestions have abundant support in the authorities.

In *Fones Hardware Co. v. Erb*, 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353, the court considered a case where the county judge and bridge commissioners had adopted general specifications for building a bridge, but without having a definite plan and detailed specifications, advertised for "sealed proposals, competitive plans and specifications." The constitution of Arkansas provided that all such contracts should be given to the lowest responsible bidder. In discussing the meaning of the constitutional provision, as applied to the facts stated, the court said:

"It embodies three vital principles—an offering to the public, an opportunity for competition and a basis for an exact comparison of bids; and any statutory regulation of the matter which excludes or ignores either principle destroys the distinctive character of the system and thwarts the purpose of its adoption. Any arrangement which excludes competition prevents a letting to the lowest bidder; and it does not matter that such an arrangement maintains the form of public letting; if it excludes the essential principle of competition, there can be no real public letting."

The court further observed that the purpose which the law designed to accomplish was to afford an opportunity to all persons to bid upon the specific thing to be let according to plans previously adopted and made known; that general specifications were not sufficient, but it was essential that there should be such definite and detailed specifications as would

disclose the work to be done with fullness and detail, without which there could be no intelligent competitive bidding and no basis of comparison for ascertaining who in fact was the lowest bidder.

In *Wells v. Burnham*, 20 Wis. 119, it was held, in construing a statute requiring contracts to be let to the lowest bidder, that it was essential that the contract, plans and specifications should describe and specify definitely "the work to be done, the manner or style in which it was to be done, and the material to be used." In *Mazet v. Pittsburgh*, 137 Pa. St. 548, 20 Atl. 693, discussing the meaning of the phrase "lowest bidder," at page 563, it is said:

"The expression, 'lowest bidder,' necessarily implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared specifications of the work to be done, and materials to be furnished,   .   .   .."

In *Sanitary District of Chicago v. Lee*, 79 Ill. App. 159, after examining numerous authorities as to the necessity for specific data as a basis for competitive bidding on work of a public nature, the court said:

"The *ratio decidendi* plainly is, that all matters essential to the contract to be let must be determined before advertising for bids, and that the advertisement, including documents to which it refers, must give full and definite information of the precise work to be done as a basis for intelligent bidding."

In *People v. Commissioners of Buffalo County*, 4 Neb. 150, it was held that the board of county commissioners could not enter into a contract for the construction of a bridge when the only competitive bidding was upon plans furnished by the respective bidders. The court said that, to permit the commissioners to accept plans and bids thereon at the same time, they accepting such as they approved, prevents competition and invites corruption, favoritism, and fraud. The same principle is announced in *Packard v. Hayes*, 94 Md. 233, 51 Atl. 32; *Andrews v. Board of Commissioners*, 7 Idaho 453, 63 Pac. 592, and *Ertle v. Leary*, 114 Cal. 238, 46 Pac. 1.

There is little difference in principle between calling for bids upon specifications furnished by the bidder and calling for bids upon a notice that any type, design, construction, make, patent or method of operation will fulfill the requirements if it shall perform the functions indicated by the specifications "to the satisfaction of the board of public works and the city electrician."

The respondents cite *People ex rel. Coughlin v. Gleason,* 121 N. Y. 631, 25 N. E. 4; *City of Detroit v. Hosmer,* 79 Mich. 384, 44 N. W. 622, and *Mayor v. Flack,* 104 Md. 107, 64 Atl. 702. The *Gleason* case merely holds that a charter provision requiring contracts to be given to the lowest responsible bidder should be construed so as to fairly and reasonably accomplish its purpose. In the *Hosmer* case the specifications for lighting called for bids to furnish light on any plan that would furnish lights of two thousand candle power. This was held sufficiently definite. In the *Flack* case three separate and distinct sets of specifications were prepared, each complete in itself, upon which competitive bids were solicited for street paving. One set was for an asphalt block pavement, the second was for a vitrified brick pavement, and the third was for a bitulithic, the latter being a patented process. Two bids were submitted on vitrified brick, one on asphalt block, and three on bitulithic, one of the latter being accepted. Two contentions were made against the validity of the contract (1), that it was incumbent upon the public officers to determine in advance the precise material desired, and (2) that specifications could not be adopted which called for a patented article. The court overruled both contentions. Answering the first contention, it was held that, viewing it as a question of power only, it could make no difference whether the particular kind of pavement was selected before or after the bids were called for, when the specifications were complete, distinct, and descriptive of wholly different kinds of pavement, but all suited to the same general purpose. The court quoted with approval from the opinion of Judge

Cooley, in *Attorney General v. Detroit,* 26 Mich. 263, as follows:

"It would be the duty of the council, when all the bids are in, to examine all, and to select the kind of pavement for which the bids, all things considered, were relatively the lowest."

We do not read these cases as being at variance with the views we have expressed. The *Flack* case seems to be the one most relied upon by the respondents. In that case, as we have noticed, there were three sets of specifications, each complete in itself, each providing for a different kind of pavement. Bids were invited upon each set of specifications. When all bids were received, official duty was discharged, as Judge Cooley observed, by selecting the kind of pavement "for which the bids, all things considered, were relatively lowest."

But the respondents contend that the notice was issued so as to free the specifications from patented articles and thus permit open bidding, and that this was the intention of the board and of the city electrician in preparing them. If the board found that the specifications did not specify with sufficient detail, or that they contained undesirable matter, or that they were in some respects word pictures of certain patents, and that in these respects they were not desirable, the plain duty of the board was to reject all bids and to prepare and file satisfactory specifications and re-advertise for bids. If there is any doubt as to the correctness of our interpretation of the notice, that doubt is removed by the testimony of the expert witnesses, all of whom agree that it is widely at variance with the specifications.

We conclude, therefore, that the notice of May 20, issued by the board of public works, is so at variance with the spirit of the city charter and so indefinite as to invalidate all subsequent proceedings. This view will enable the city to so frame its specifications as to offer full opportunity for competitive bidding. Any other construction would render the charter provision wholly inefficient and impotent.

The court found that the plaintiffs and interveners were residents and taxpayers of the city at the time of the commencement of the action. As such they can maintain this action. The fact that the unsuccessful bidder will defray the expenses of the suit, and that it caused the suit to be commenced, does not change the rule. *Times Pub. Co. v. Everett*, 9 Wash. 518, 37 Pac. 695, 43 Am. St. 865. The view we have taken of the case makes it unnecessary to consider the other questions argued at bar and presented in the briefs.

The judgment will be reversed, with directions to grant a permanent injunction.

RUDKIN, C. J., FULLERTON, and CHADWICK, JJ., concur.

MORRIS, J., took no part.