[No. 8821.   Department One.   October 12, 1910.]

HAROLD G. STERN, *Appellant*, v. THE CITY OF SPOKANE
*et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS—CONTRACTS—BIDS—DISCRETION —DECLA-
RATION OF EMERGENCY. Where a city charter provides that if a city
council shall "declare an emergency to exist," competitive bids for
the letting of a contract may be dispensed with, the declaration of
an emergency is a matter of legislative discretion which cannot be
controlled or inquired into by the courts.

SAME—REJECTION OF BIDS—AWARD—DISCRETION. Where a charter
provision requires a city council, before letting a contract, to ad-
vertise for competitive bids "reserving the right to reject any and all
bids," a discretion is reposed in the council to let the contract to
one it considers the "best" bidder; and in the absence of fraud or
measurable pecuniary loss to the city showing a manifest abuse of
discretion, the courts will not interfere with the rejection of the  ·
lowest bid, and an award to a higher bid, on pumping machinery
requiring a specified proficiency, a technical and scientific knowledge
being necessary to determine between the different manufactures
offered.

Appeal from a judgment of the superior court for Spokane
county, Webster, J., entered February 24, 1910, upon sus-
taining a demurrer to the complaint, dismissing an action for
an injunction.   Affirmed.

*Samuel R. Stern,* for appellant.

*Fred B. Morrill* and *Poindexter & Moore,* for respondents.

CHADWICK, J.—This action is prosecuted by appellant,
who is a taxpayer in the city of Spokane, to restrain the city
from accepting and paying for certain pumping machinery
contracted for by its board of public works.   The contract
was awarded to the Allis-Chalmers Company.   This com-
pany, like the Moran Engineering Company of which appel-
lant is an officer and stockholder, is engaged in the business
of contracting for machinery of the character mentioned.
The Allis-Chalmers Company and Moran Engineering Com-

[1]Reported in 111 Pac. 231.

pany had submitted bids on the 5th day of November, 1909, the Moran company being the lowest bidder. Thereafter a member of the board of public works, together with the city engineer, allowed the Allis-Chalmers Company to modify its bid, and were about to award a contract to it, when, upon advice of the city attorney that their proceedings were irregular, the board undertook to re-advertise for bids. Thereupon, at the solicitation of the board of public works, the city council passed a resolution declaring an emergency. This resolution was passed on the 15th day of December, 1901, and an advertisement for bids was inserted in the Evening Chronicle, a newspaper published on the evening of the 16th of December, and in the Spokesman-Review, a newspaper published on the morning of the 17th. The time for receiving bids was fixed in the advertisement for the hour of two o'clock p. m. on the 17th.

The later proposal differed from the one under which the original bids had been submitted, in that it provided that "the board of public works reserved the right to reject any and all bids submitted." Both the Allis-Chalmers Company and the Moran Engineering Company submitted bids on the 17th, the Moran Engineering Company being again the lowest bidder, and it is alleged in plaintiff's complaint that its bid conformed in every respect to the requirements of the advertisement and the specifications on file in the office of the city engineer, and that the bid of the Allis-Chalmers Company did not. Notwithstanding, the board let the contract to the Allis-Chalmers Company. The proposal for bids specified the following equipment: "Three 7,500,000 gal. multi-stage centrifugal pumps; three inductive motors, switchboard and connections." The bidders offered machinery of different manufacture; but, in the opinion of the bidders offering it, capable of doing the work required and coming within the equipments specified. The contention of the appellant is that, not only the letter of the law, but its spirit

also, was violated by the action of the council and the board
of public works.

The case may be reduced to two propositions of law: (1)
Did the council have the power to declare an emergency;
and (2) did the board of public works have a legal right to
reject the bid of the Moran Engineering Company. We shall
discuss these questions in their order.

While it is alleged that the board acted in fraud of the
rights of the competing bidder, it does not follow as a legal
proposition from the seemingly arbitrary conduct of the
board that a presumption of fraud will arise; so that, how-
ever great the wrong may have been to the Moran Engineer-
ing Company or to plaintiff, he can have no remedy, provided
the council and the board of public works acted within the
law. The freeholders' charter of the city of Spokane pro-
vides:

"Sec. 98. When it shall be decided to do work by contract,
they shall advertise at least ten days in two daily newspapers
of the city for bids, accompanied by a certified check to an
amount to be fixed by the board and named in said adver-
tisement, not exceeding 10 per cent of the estimated cost of
the work, reserving the right to reject any and all bids;
provided, that in all contracts awarded in which the probable
amount of expenditure would exceed $1,000, the publication
shall be made for a period not less than twenty days. If
the mayor and city council shall by resolution declare an
emergency to exist, the publication herein provided for may
be dispensed with."

Acting under this provision of the charter, the council de-
clared that an emergency did exist, and so far as the Moran
Engineering Company is concerned, there was no prejudice,
for it was not barred of its right to submit a competitive bid.
But inasmuch as plaintiff prosecutes this action as a tax-
payer and citizen, and not alone because of his interest in
the Moran Engineering Company, we are willing to pass
upon the merits of the question. All of the provisions of
the law with reference to bids for public works are to be

found in the freeholders' charter. No constitutional question is involved. That which the legislature can give it can take away, and while we agree with counsel for appellant that, if the action of the council in declaring an emergency to exist be upheld, it practically nullifies those provisions of the charter which were designed to insure open competition in the matter of letting contracts for public works, we must nevertheless hold that it can be no concern of the courts if it does. If the legislature passes a wholesome law and at the same time creates a weapon to strike it down, it is still within the limit of its constitutional authority, as much so as if it had repealed an existing statute by express enactment. It is so in this case. The charter does not say that time may be dispensed with if an emergency exists, thus leaving the court free to inquire into the fact, but it says that the council shall have the power under any state of facts to declare an emergency. The rule in such cases is stated in *Dillon v. Whatcom County*, 12 Wash. 391, 41 Pac. 174, as follows:

"While it might appear to the court as a matter of public policy that great evil and inconvenience would result from an injudicious or mean policy on the part of the county commissioners, yet the discretion having been submitted to them by a vote of the people constituting themselves their agents to do this business for them, reposing confidence in their judgment and integrity, the people must abide by their own action in selecting these agents and the courts are powerless to relieve them from the results of their own bad judgment in such selections."

This court has so frequently held that legislative discretion in matters falling within the constitutional limit of legislative authority will not be controlled by the courts, in the absence of positive fraud, that a citation of the authorities through which this principle is threaded will be sufficient without further discussion. *Ponischil v. Hoquiam Sash etc. Co.*, 41 Wash. 303, 83 Pac. 316; *Kakeldy v. Columbia & Puget Sound R. Co.*, 37 Wash. 675, 80 Pac. 205; *Frederick*

*v. Seattle,* 13 Wash. 428, 43 Pac. 364; *Selde v. Lincoln County,* 25 Wash. 198, 65 Pac. 192; *Ewing v. Seattle,* 55 Wash. 229, 104 Pac. 259; *Nichols v. School District,* 39 Wash. 137, 81 Pac. 325; *Parmeter v. Bourne,* 8 Wash. 45, 35 Pac. 586, 757; *Heffner v. Board of County Com'rs,* 16 Wash. 273, 47 Pac. 430; *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340.

Then, too, the council has the same right to declare, and by analogy, its act can be sustained by reference to the power of the legislature to declare, an emergency, and thus put laws in effect before the time they would otherwise become effective under the constitution. It is not that an emergency in fact exists, but that the legislature or other legislative body having the power has said that it is so. When it has, "the courts will not inquire into it nor entertain any question of its sufficiency." Sutherland, Stat. Const., § 108.

This case is to be distinguished from *Green v. Okanogan County, ante* p. 309, 111 Pac. 226, wherein we held that no emergency existed which would warrant the board of county commissioners in letting a contract without inviting open competition. The provision of the law there construed (Laws 1903, p. 324, § 15), is that all work shall be let to the lowest bidder, "except in case of emergency;" but no authority is given the board of county commissioners to declare the emergency as a matter of legislative discretion, thus leaving the court free to inquire into the facts. And also from the case of *Goshert v. Seattle,* 57 Wash. 645, 107 Pac. 860, where the charter provision was mandatory that the contract should be let to the lowest bidder.

The answer to the second proposition—that is, that the Moran Engineering Company was the lowest bidder and therefore entitled to the contract, is answered by the charter itself. It provides explicitly that the board shall reserve the right to reject any and all bids, and in the absence of a showing of fraud or such a pecuniary loss to the city, to be determined by some measurable standard, as to

indicate a manifest abuse of discretion, the courts have no power to substitute their judgment for that of the board. It is a recognized fact that many of the materials and equipments now in general use and recognized by competent authorities to be the best adapted to modern uses and conveniences are controlled by patents, so that the license contained in § 98 of the freeholders' charter is not unusual, and unless the charter provision is mandatory and clearly intended to apply, the courts will refuse to control the discretion of the city officials in such cases. The words "reserving the right to reject any and all bids" are equivalent in law to saying that the board may let the contract to the one to whom it considers the best bidder. The rule in such cases is that the quality of the materials to be furnished, as well as the price bid, may be taken into consideration in determining which of the several bids is the lowest. 28 Cyc. 663; *Trapp v. Newport*, 25 Ky. Law 224, 74 S. W. 1109; *Barber Asphalt Co. v. Gaar*, 24 Ky. Law 2227, 73 S. W. 1106; *People ex rel. Assyrian Asphalt Co. v. Kent*, 160 Ill. 655, 43 N. E. 760; *Becker v. Roth* (Ky.), 115 S. W. 761; *Anderson v. Public Schools*, 122 Mo. 61, 27 S. W. 610, 26 L. R. A. 707.

In the latter case it was said:

"It is indeed asserted that the defendant rejected the plaintiffs' bid 'without cause, arbitrarily and capriciously, through favoritism and bias.' But, if the defendant had the absolute right to reject any and all bids, no cause of action would arise to plaintiffs because of the motive which led to the rejection of their bid. The right to reject the bids was unconditional. Defendant was entitled to exercise that right for any cause it might deem satisfactory, or even without any assignable cause. Whatever its rules or practice as to the acceptance of bids may have been, plaintiffs' rights cannot be justly held to be greater than those conferred by the published advertisement on which their bid was made. That advertisement was not an offer of a contract, but an offer to receive proposals for a contract."

In this case the specifications were of necessity elastic, calling for pumps and equipment calculated to raise a certain

quantity of water.  Bidders necessarily offered machinery of different manufacture, and for us to say in behalf of an unsuccessful bidder, considering only the difference in the bids in connection with the whole price paid, that his machinery is better calculated to do the work required by the board, would be to substitute our judgment for that of the municipal authorities in a matter requiring a technical and scientific knowledge, and in a case expressly reserved by the people of Spokane for themselves.  It in no way affects the law as we have declared it to say that appellant may be correct in his contention that the board of public works may have been partial to the Allis-Chalmers Company, and arbitrarily rejected the bid of his company.  But this it has the power to do, and if it be a fault of the law, the people who made the law will have a present opportunity to correct it.  The court will take judicial notice that the city of Spokane is at the present time considering a new freeholders' charter.

The judgment of the lower court is affirmed.

Rudkin, C. J., Fullerton, Morris, and Gose, JJ., concur.