SHOFNER *v.* DOWELL.

Opinion delivered March 16, 1925.

1. COUNTIES—APPROPRIATION FOR STREET IMPROVEMENT.—Though a resolution of a county quorum court appropriating money for street improvement in aid of an improvement district recited that the necessity for the appropriation arose from the State's failure to bear its share of the proposed improvement, this was a mere expression of the court's opinion as to the State's duty, and the appropriation was proper, as the streets to be improved were part of the county highway system.

2. COUNTIES—LENDING OF COUNTY'S CREDIT.—Const. art. 12, § 5, prohibiting counties from lending their credit to any corporation, association, institution or individual, does not prevent a county from making an appropriation to aid in building a proposed street improvement.

3. COUNTIES—BRIDGE FUND—AVAILABILITY FOR ROAD PURPOSES.—A sum appropriated by the quorum court as a "bridge fund," under Crawford & Moses' Dig., § 1982, authorizing appropriations for building and repairing public roads and bridges, is available for constructing roads as well as bridges, and an allowance from such fund in aid of a street improvement is not invalid under Const. art. 16, § 11, forbidding tax money levied for one purpose to be used for any other purpose.

4. COUNTIES—VALIDITY OF ALLOWANCE.—An allowance by the county court for a street improvement out of a special bridge fund on hand is not invalid by reason of the fact that the county court agreed to make additional allowances out of the revenues of future years.

5. COUNTIES—CONTRACT TO PAY HALF OF STREET IMPROVEMENT.—An agreement by the county judge with an improvement district on behalf of the county to pay one-half of the cost of a street improvement is binding on the county on performance by the district, though it will require the revenues of future years to pay the county's share.

6. COUNTIES—VALIDITY OF WARRANTS PAYABLE IN FUTURE.—County warrants to be paid from future appropriations for road and bridge purposes, given pursuant to a contract made by the county court to pay for one-half of a street improvement, *held* binding and not invalid because future appropriations would be required for their payment, in view of special act of June 30, 1924, validating such warrants.

Appeal from Washington Chancery Court; *Sam Williams,* Special Chancellor; affirmed.

*John Mayes* and *W. N. Ivie,* for appellants.

*Nance & Seamster* and *Geo. A. Hurst,* for appellee.

SMITH, J.  Appellants, who were plaintiffs below, are residents and taxpayers of Washington County, and, for their cause of action, alleged that, at the regular session of the quorum court of that county, an illegal appropriation was made and an illegal tax levied.

It was further alleged that, at the meeting of the quorum court, a member thereof offered a resolution which recited that the city of Fayetteville had for several years been endeavoring to have the streets around the University of Arkansas campus paved—that the adjacent property owners had petitioned for an improvement district to be formed for that purpose, but there was an insufficient valuation under the law.  It was further recited, in the resolution offered in the quorum court, that the General Assembly of the State had been appealed to to pay for the State's part of the streets embraced in the improvement district, but this request had been denied, and therefore the improvement district could only be formed by Washington County bearing the State's part of the expense of said improvement district.

The record of the quorum court further recites that, "after due deliberation and consideration had thereon, it was moved by Justice A. B. Terry and seconded by Justice Ben F. Wood, that a sum of money, not exceeding $30,000, be and the same is hereby appropriated out of the special bridge fund of said county, payable as follows:  The sum of $10,000 from the collection of taxes made in the year 1924, the sum of $10,000 from the collection of taxes made in the year 1925, and any sum necessary, not exceeding $10,000, from the collection of taxes made in the year 1926, to pay the State of Arkansas' part, or one-half of the paving of the following streets adjacent to the University of Arkansas property, in the city of Fayetteville, Arkansas, to-wit:  (Thereafter follows a description of the streets to be improved).  And the county judge is hereby authorized to issue warrants in

keeping herewith when the owners of property along and on the opposite of said streets or parts thereof pave their one-half thereof.'' This motion was unanimously adopted by the quorum court.

The complaint further alleged that, on or about January 1, 1924, the county judge allowed and ordered paid a claim against the county by the commissioners of the improvement district in the sum of $24,536, to be paid with three separate warrants, two payable in 1924 and 1925, for $10,000 each, and one in 1926 for $4,536 (these three payments equaling one-half of the total cost of the improvement), and, pursuant to this order, county warrants were drawn conforming thereto, payable to the improvement district.

That the warrant payable in 1924 was presented to the county treasurer on January 7, 1924, and was paid by that official to the commissioners of the district, it being alleged that this was done, although ''there had been no part of said levy for said special bridge fund for Washington County collected at the time said warrant was paid by the county treasurer for the year 1924; that the county collector had paid into the county treasury more than $7,000 for the purpose and in furtherance of the conspiracy to permit the said defendant, H. C. Evans, as commissioner, to cash said warrant, but as to where said collector obtained said money, and from what funds, are to the plaintiffs unknown, but the same was not a part of the collection of said two-mill levy for the special bridge fund for the year 1924, as none of said fund had been collected at that time.''

It was alleged that the warrants had been illegally issued, and that payment of one of them had been made in violation of law.

Plaintiffs therefore prayed, for the benefit of themselves and all other taxpayers similarly situated, that the county judge, the sheriff and collector, the county treasurer, and the commissioner of the improvement district, who were all made defendants, be enjoined from attempting to enforce the illegal order or appropriation of the

quorum court, and that the county judge be enjoined from issuing any warrants upon said illegal appropriation, and that any warrants issued be canceled, and that the county treasurer be enjoined from paying any of said warrants, and that the collector be enjoined from paying to himself any money he had advanced and paid into the county treasury to the credit of the county's bridge fund, and that the improvement district be enjoined from cashing any warrant which may have been issued it, and that it be required to refund the sum of $10,000 it had received in payment of the $10,000 warrant.

The defendant demurred to the complaint upon the grounds (1), that the complaint did not state facts sufficient to constitute a cause of action against either of the defendants; and (2), that the court had no jurisdiction of the persons of the defendants or of the subject of the action.

Upon the hearing the court overruled "that part of said demurrer as to the jurisdiction of the court, to which action the defendants excepted, but sustained the other grounds in said demurrer, to which the plaintiffs excepted and declined to plead further; whereupon this cause is dismissed at plaintiffs' cost." This appeal is from that decree.

It is first insisted that the entire appropriation is invalid, for the reason that it appropriates county funds for a State purpose. It is true that the resolution adopted by the levying court recites the failure of the State to pay its part of the cost of the improvement, and that the improvement could not be made unless the county would assume the State's part of the cost. But this is a mere expression of the court's opinion as to the State's duty in the premises. The resolution did not change the facts in the case. The streets to be improved are a part of the county's highway system, and it was entirely appropriate and proper for the county to improve them or assist in doing so, notwithstanding the

members of the court were of opinion that the State should have made an appropriation for this purpose.

It is next insisted that the appropriation is invalid as violating § 5, article 12, of the Constitution, which provides, among other things, that no county shall loan its credit to any corporation, association, institution, on individual.

This court has held, however, in a number of cases, that improvement districts are not invalid because the street improvements contemplated cannot be constructed without the aid of the county in which they are located.

In the case of *McDonnell* v. *Imp. Dist.*, 97 Ark. 304, it was contended that the proposed street improvement could not be constructed with the tax which could be collected on the betterments assessed in the district, and that it would be a futile thing to waste money to begin an improvement which could only be completed with aid from the county, and that the county might withhold this aid, although it had been pledged. This court held, however, that this contingency did not justify a court of equity in stopping the work of the improvement. Had it been thought that an appropriation could not be made by the county on account of an inhibition of the Constitution to the contrary, the holding would have been otherwise.

The power of a county to make such contribution was expressly recognized in the later cases of *Deane* v. *Moore,* 112 Ark. 254, and *Mullins* v. *Little Rock,* 113 Ark. 590; *Mullins* v. *Little Rock.* 131 Ark. 67.

In the case of *Greenburg Iron Co.* v. *Dixon,* 127 Ark. 470, it was contended that the county court had no authority to expend the road fund in constructing a bridge in a city or town; but this contention was disposed of by saying that the court had held to the contrary in the case of *Texarkana* v. *Edwards,* 76 Ark. 22.

It is next insisted that the appropriation violates § 11, article 16, of the Constitution, which provides that "no moneys arising from a tax levied for one purpose shall be used for any other purpose." It is pointed out

that, in making the annual appropriation, the levying court had levied a special bridge tax of two mills on the dollar, and it is insisted that contracts for the constructon of bridges only could be made.

Section 1982, C. & M. Digest, provides the procedure for the quorum court in levying taxes for county purposes, and in paragraph 6 thereof specific items are mentioned for which appropriations shall be made, and sub-paragraph 6 thereof provides that appropriations shall be made "to defray the expense of building and repairing public roads and bridges and repairing and taking care of public property."

This special bridge tax of two mills was obviously voted pursuant to sub-paragraph 6 of paragraph 6 of § 1982, C. & M. Digest, and we think the money thus voted was available for the construction of roads as well as bridges.

In the case of *School Dist. of Hartford* v. *West Hartford Special School Dist.*, 102 Ark. 261, a tax of seven mills had been voted for school purposes, of which four mills had been voted for the construction of a schoolhouse and three mills for the payment of teachers. It was there contended that the tax voted for building purposes could not be appropriated for any other purpose than that of erecting a schoolhouse, but the court said: "We cannot agree with that contention. The section of the Constitution in question provides that the General Assembly may by general laws authorize school districts to levy, by a vote of the qualified electors of such district, a tax not to exceed a certain rate. This is for all school purposes, and the particular rate which can be levied or used for the purpose of constructing schoolhouses in the several school districts is not designated. Evidently, then, the section of the Constitution in question did not intend to place any restrictions on the use of school funds, other than that they should be used for school purposes. If it had, appropriate language to effectuate that intent would have been used. If the framers of the Constitution did not divide the school fund into

separate classes, but, on the contrary, did provide a
maximum rate which might be levied for all school pur-
poses, how can it be said that such fund is appropriated
to another purpose, when it is designed and intended
to be used for any of the purposes for which it might be
levied? The Constitution places no restriction upon the
use of school funds other than that they must be devoted
to the purposes for which they were levied."

We conclude therefore that an appropriation of the
quorum court, pursuant to the statute, for bridge pur-
poses authorized the county court to make contracts for
the improvement of streets to be paid for out of that
appropriation.

It is insisted that the appropriation is void because
it attempts to appropriate the revenues of future years;
that it was contemplated that the cost to the county would
exceed the sum appropriated for the then current year,
and the county could not pay the part of the cost which
it assumed out of the revenues appropriated for the
then current year. In other words, it is insisted that
the authorization to construct the improvement was void
because its cost exceeded the appropriation for the cur-
rent year, and the improvement could only be paid for
by subsequent appropriations to be thereafter made.

In the case of *Watkins* v. *Stough,* 103 Ark. 468, the
county court entered into a contract to build a bridge, and
the clerk of the court, on behalf of himself and other
citizens as taxpayers, appealed from the order of allow-
ance made by the county court in payment of the work.
It was contended that the contract was void for the rea-
son that no specific appropriation of funds had been
previously made by the levying court to pay for bridges
of the class of the one in question, although there had
been an appropriation by the levying court generally for
bridge purposes. In disposing of this contention the
court said: "The statute expressly authorizes the
county court to enter into contracts for the construction
of bridges of any description needed, and the only limita-
tion of that power is that found in the statute which pro-

vides that 'no county court or agent of any county shall hereafter make any contract on behalf of the county unless an appropriation has been previously made therefor and is wholly or in part unexpended.' Kirby's Dig., § 1502. This statute applies to bridge contracts as well as all others made by the county. *Fones Hdw. Co. v. Erb,* 54 Ark. 645. The general appropriation for 'bridge purposes,' if wholly or in part unexpended, was sufficient to authorize the county court to enter into contracts for bridges of any class. We do not understand the statute to mean that the levying court must first signify its 'favorable judgment' for the construction of a particular bridge by making a specific appropriation for that purpose. When the levying court makes an appropriation for the purpose of building bridges, the statute authorizes the county court to make contracts for its expenditure and to continue to make such contracts as long as the fund remains unexpended, in whole or in part. *Fones Hdw. Co. v. Erb, supra.* There is no proof that the funds appropriated had been wholly expended at the time the contract with appellee was entered into, and, in the absence of such showing, we must not presume that the county court exceeded its authority in making the contract. *Howard County v. Lambright,* 72 Ark. 330.''

In the instant case there was an appropriation which authorized the county court to contract for the improvement of the highways of the county.

In the case of *Hilger v. Chrisp,* 98 Ark. 490, it was said that, under the Constitution, the full court, composed of the county judge and the justices, is the tribunal for the purpose of levying taxes, but that the county court, composed of the county judge alone, is authorized to proceed to make contracts for the expenditure of the money appropriated.

Here the levying court made an appropriation which contemplated a particular improvement, not to exceed $30,000 in cost. Pursuant to this authority, the county court made a contract which involved the expenditure

of $24,536 of this money. It is true only $10,000 was available under the appropriation made out of the funds of the current year, but this limitation did not deprive the county court of its jurisdiction to contract for an expenditure exceeding the appropriation available for the year in which the contract was made. An appropriation had been made, and it had not been wholly expended, and the county court had the authority to make the contract.

In the case of *Greenberg Iron Co.* v. *Dixon, supra,* the county judge and the city authorities of Bentonville had decided to build a bridge on one of the streets of that city and to apportion the cost between the city and the county. No appropriation had been made by the levying court of the county to build the bridge, and it was insisted that a county warrant which had been issued by the county court in payment of the part which the county had agreed to assume was invalid on that account, and the circuit court so held. In reversing the judgment of the circuit court we said: "The judgment of the circuit court was wrong. It has been held that, under our statute, the county court has no power to let a contract to construct a bridge without some appropriation made for building bridges by the levying court. *Fones Hardware Co.* v. *Erb,* 54 Ark. 645. It cannot be determined from the record whether or not there was an appropriation for building bridges in Benton County for the year in question. It is true, the record recites that there was no appropriation for building this particular bridge; but this was not necessary. Upon the authority above recited, if there was an appropriation for building bridges, the county court had the power to act, and is not limited to the amount appropriated. When the levying court appropriated any sum for building bridges, that indicates its judgment that the work should be done; and the county court, in contracting for the construction of bridges, is not limited to the amount appropriated."

We think the agreement of the county judge to pay one-half the cost of the proposed improvement has all

the attributes of a contract, and was a contract which the court had the right to make, and, upon the performance of the contract by the other contracting party by improving the streets, the county became and is liable for the balance which it agreed to pay. We therefore decline to hold the orders of the court set out above to be void.

We are unwilling also to order the cancellation of the unpaid warrants. These warrants evidence the contract on the part of the county. Provisions for their payment must be made by future appropriations by the levying court, but it does not follow that they are invalid because future appropriations will be necessary for their payment. They represent a contractual demand against the county, which the holder thereof may enforce against the county in the same manner that any other creditor of the county would proceed to enforce a valid demand, and will no doubt be paid in the same manner.

The fact that the order of the county court contributing to the proposed improvement contemplated that the county would incur an obligation which could not be discharged out of the revenues collected in the year in which the contract was made, did not render it invalid.

In the case of *Hilliard* v. *Bunker,* 68 Ark. 340, the court said: "In such an expensive matter as the building of a courthouse and jail, it is not, of course, expected, under ordinary circumstances, to cover the whole amount by the levy for one year, and in fact this cannot be done, since, together with the ordinary expenses of the county, the levy for erecting these buildings must not exceed in one year the rate of five mills. The amount and number of the annual installments necessary to cover the whole cost of the structure must be and is left to the discretion of the levying court, to be exercised so as to accomplish the result intended in a reasonable time."

In this connection, it may be said that these warrants evidencing this demand were validated by act No. 3 of the Acts of the Special Session of the 1924 General

Assembly, approved June 30, 1924, page 46 of the Special Acts of 1924.

The county has entered into a valid and enforceable contract, and we think the court below was correct in refusing to cancel the evidence thereof which had been given to the party with whom the county contracted, and that decree is therefore affirmed.

The CHIEF JUSTICE and Mr. Justice HART dissent from that part of the opinion which relates to warrants payable in future years—1925 and 1926.

### DISSENTING OPINION.

McCULLOCH, C. J.   I agree fully with the majority that it was within the power of the county court to make contributions from county road funds to the improvement district to aid in paving a street, and that the warrant payable during the year for which an appropriation was made was valid, but I dissent from that portion of the opinion which holds that warrants payable in future years are valid.

The case contains no element of contractual relation between the county and the improvement district. The power of the county court over public highway does not arise out of any contractual relation, but is derived from the Constitution, and the power is exercised as a public function. The county court may contract with an individual or a corporation with reference to the construction or improvement of the public highways, but it has no authority under the Constitution to enter into a contract with another public agency with reference to the cost of improving highways. The county may, as before stated, make donations in aid of the work being done on the highways by an improvement district or by a municipality, but it is not bound by a mere agreement to share the expense. Eliminating, therefore, all element of contract, the only thing that the county court could do was to make appropriations of the county funds and, when collected, make such contributions out of those funds as the county court saw fit. There could be no contributions

from the funds until the same had been regularly appropriated by the quorum court, and that court has no authority to appropriate funds except for one year. If the quorum court can appropriate funds for two or more years, it can do so for a dozen years. The Constitution (art. 7, § 30) contemplates that the quorum court shall meet annually for the purpose of levying taxes for the ensuing year and making appropriations of the revenues thus raised.

My conclusion is that the warrants payable during the years 1925 and 1926 are invalid, and that the relief prayed for should have been granted.

Mr. Justice HART agrees with me in these views.